Patrick G. PATTERSON
*v.*
DEPARTMENT OF REVENUE
(TC 3699)

Frank C. Rote, III, Brown, Hughes, Bird, Lane & Rote, Grants Pass, represented plaintiff (taxpayer).

Rochelle Nedeau, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for plaintiff rendered June 30, 1995.

## CARL N. BYERS, Judge.

Taxpayer appeals the 1992-93 assessed value of a mobile home park in Grants Pass. A portion of the park was under construction on the assessment date, making evaluation of the park more difficult.

Taxpayer purchased the subject property in June 1987, for $240,000. At the time of purchase, the park had twenty-five, older style, single-wide spaces; treated gravel streets; above-ground installation with metal skirting, metal carports and metal awnings. There were no sidewalks or street lights in the park. The park had septic problems and the Department of Environmental Quality required the park to be connected to city water and sewer. Taxpayer purchased the property planning to develop it further. Taxpayer is a contractor who builds mobile home parks and sells mobile homes.

After purchasing the property, the taxpayer commenced construction of an additional twenty-seven, double-wide spaces. This area has paved streets, concrete curbs, sidewalks, driveways, and street lights. The mobile homes are installed in excavated sites and provided with high-quality accessories including wood carports. Overall the new section is of higher quality. In addition the property includes excess land which has limited development potential due to a seasonal creek running through it.

The parties stipulated the total land value is $181,940. The disagreement as to the value of the improvements involves some factual disputes. As of July 1, 1992, taxpayer maintains that only nine of the twenty-seven, double-wide spaces had been completed; the assessor maintains fifteen had been completed. In reviewing the evidence, taxpayer's income records showed only nine had been rented. The assessor views another six as substantially complete despite the fact that taxpayer had not excavated or installed the pad, utility lines, driveway and carport. These improvements are not undertaken until a tenant has signed a lease.

■    The court finds that the improvements required to complete the six spaces were substantial. Regardless of the reasons why the spaces were not complete, the fact is they were not and should not be valued as complete spaces.

Accordingly, the court finds that only nine of the double-wide spaces were complete as of the assessment date.

Part of the disagreement between the parties arises because taxpayer believes spaces should become taxable when rented. Taxpayer testified that he thought he had an agreement with the assessor's office to that effect. On the other hand, the assessor considers spaces taxable as they are developed, regardless of when they are rented. The county's appraiser indicated that taxpayer chose not to rent some spaces and implied that taxpayer did not rent a space unless the tenant purchased a mobile home from him. Aside from the fact that this practice is prohibited by ORS 90.525, taxpayer testified that he has tried to rent every space and has since rented all the single-wide spaces except one. It is reasonable to conclude that taxpayer tried to maximize his income.

■■ Taxpayer relied primarily upon the income approach and the cost approach. Defendant relied upon all three approaches. Although there was some testimony as to the cost approach, the court gives it almost no weight because taxpayer does much of his own work, and there are no records to account for the value of his personal efforts. The assessor's cost estimate was made on a cost-per-space basis from a cost-factor book. The appraiser provided no details to show that the cost-factor book had been correctly applied.

■■ Using the income approach, taxpayer relied upon actual income, deducting five percent for vacancy and forty percent for expenses. Taxpayer accepted the assessor's ten percent capitalization rate which included property taxes. As a result, taxpayer inadvertently duplicated expenses for property taxes, vacancy, and credit losses. This rendered taxpayer's estimate of market value by the income approach less reliable. The assessor's appraiser estimated economic rents, and derived a total gross income of $84,036. He deducted five percent for vacancy and credit loss and thirty-five percent for expenses, arriving at a net income of $51,892. When this amount is divided by the capitalization rate of ten percent, it produces an indicated value of $518,920 for the completed spaces. The value of the partially completed spaces and excess land must be added to that value.

Taxpayer leases his spaces, as opposed to renting them on a month-to-month basis. This practice may produce less vacancy, but it also may yield taxpayer lower-than-market rent. Overall, the court concludes that the assessor's estimate of economic rents ($175 for single-wide spaces, $219 for double-wide spaces) is too high. None of the assessor's three comparable sales averaged $175 per month. The court accepts taxpayer's actual (estimated) income of $6,015 per month or $72,180 per year. Since that amount already reflects vacancy and credit losses, the court need only apply a thirty-five percent expense ratio, which it finds appropriate, to arrive at a net income of $46,917. Applying a capitalization rate of ten percent results in an indicated value for the completed spaces of $469,170. To this must be added eighteen partially completed spaces at $6,500 per space or $117,000 and excess land at $52,000 for a total indicated value of $638,170.

The appraiser for the assessor also utilized a direct sales comparison approach. He analyzed three comparable sales and determined a price per space of between $12,435 and $13,722. He found that the market did not make a distinction between double-wide and single-wide spaces. He concluded there were forty completed spaces which were valued at $13,400, and twelve partially-completed spaces at $6,500, and he valued the excess land at $67,770, giving him a total indicated market value of $681,770.

The court finds that only 65,000 square feet of the excess land is available for development. Using the county's value of $67,770 for 85,000 square feet gives an indicated value of $51,824 ($52,000 rounded) for the excess land. Also, the court finds there were only thirty-four spaces completed. Based on the court's findings, thirty-four spaces at $13,400 gives an indicated value of $455,600, plus $6,500 for eighteen partially-completed spaces or $117,000, plus excess land of $52,000 which results in a total of $624,600.

After reviewing the evidence, the court finds that the real market value of the subject property as of July 1, 1992, was $625,000. Inasmuch as the parties have stipulated that the land value is $181,940, the value of the improvements is $443,060. Judgment will be entered in accordance with this opinion. Costs to neither party.